UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JERRY OSAZEE OSARETIN,<br><br>                                    Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE,<br><br>                                    Respondent. | Case No.: 26-cv-1508-JES-AHG<br><br>**ORDER DENYING WRIT FOR PETITION OF HABEAS CORPUS**<br><br>**[ECF No. 12]** |

Before the Court is Petitioner Jerry Osazee Osaretin's Amended Petition for Writ of Habeas Corpus. ECF No. 12. Pursuant to the Court's order, Respondents filed a return and Petitioner filed a traverse. ECF Nos. 14, 15. For the reasons set forth below, the Court **DENIES** the petition.

## I.    BACKGROUND

This instant petition is Petitioner's second petition for writ of habeas corpus. The Court granted in part the first petition, ordering that Respondents provide Petitioner with a bond redetermination hearing. *Osaretin v. Warden*, Case No. 25-cv-3612-JES-MSB, ECF Nos. 7, 15.

That bond hearing was held on January 13, 2026, and the Immigration Judge ("IJ") denied bond on a finding of danger. ECF No. 12 at 1. The focus of the amended petition in

1

front of the Court now focuses on the adequacy of the bond hearing and whether it comports with the requirements of 8 U.S.C. § 1226(a).

The factual background as relevant to this petition are as follows. Petitioner is a native of Nigeria who entered the United States on August 8, 2022. ECF No. 12 at 2. He was released on parole and lived in Savannah, Georgia, and subsequently Boston, Massachusetts. *Id.* While in Boston, Petitioner was criminally charged with fraud, larceny by false pretenses, larceny, and conspiracy. *Id.*; ECF No. 14-2 at 3. After he attended a court hearing in his criminal proceedings, he was apprehended by ICE and placed into immigration detention custody. ECF No. 12 at 2.

## II.    LEGAL STANDARD

District courts have the authority to review compliance with prior orders granting habeas relief, including orders for bond hearings. *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011). The party challenging compliance with the bond order bears the burden of proof, and ambiguities are resolved in favor of the non-moving party. *C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2026 WL 241823, at *3 (E.D. Cal. Jan. 29, 2026).

"When questions require a close review of agency-found facts," like an administrative judge's finding of dangerousness or flight risk in a bond hearing, "we review for an abuse of discretion." *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024); *see also Loba L.M. v. Andrews*, No. 1:25-CV-00611-JLT-SAB, 2026 WL 710307, at *5 (E.D. Cal. Mar. 13, 2026) (applying abuse of discretion standard to review compliance with an order for bond hearing on habeas); *Y.S.G. v. Andrews*, No. 2:25-CV-1884-SCR, 2025 WL 2979309, at *8 (E.D. Cal. Oct. 22, 2025) (same); *C.A.R.V.*, 2026 WL 241823 at *6 (same). The Court's review for abuses of discretion is limited to those which allege "violation by the agency of constitutional, statutory, regulatory or other legal mandates or restrictions." *See Abdelhamid v. Ilchert*, 774 F.2d 1447, 1450 (9th Cir. 1985) (quoting *Strickland v. Morton*, 519 F.2d 467, 471 (9th Cir. 1975)).

26-cv-1508-JES-AHG

Thus, the government's discretion in immigration bond hearings remains constrained by the requirements of constitutional due process limits. *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). A noncitizen may show that an IJ abused her discretion in violation of the due process clause in a bond hearing by demonstrating either that the IJ "simply did not apply the right standard to the facts" or that "the IJ erred because the evidence itself could not—as a matter of law—have supported the decision to deny bond." *Garcia v. Hyde*, 817 F. Supp. 3d 112, 126 (D.R.I. Dec. 3, 2025) (internal quotations omitted); *see also Nat. Res. Def. Council, Inc. v. Pritzker*, 828 F.3d 1125, 1135 (9th Cir. 2016) ("An agency acts contrary to the law when it gives mere lip service or verbal commendation of a standard but then fails to abide the standard in its reasoning and decision.").

## III.    DISCUSSION

Petitioner argues that the bond hearing was not constitutionally adequate, as required by this Court's bond hearing order, because it relied on a singular piece of evidence to find that Petitioner was a danger to the community—the pending criminal charge against Petitioner. ECF No. 12 at 4-8.

"To determine whether an alien is a danger to the community or a risk of flight, an IJ weighs nine factors under BIA precedent." *Martinez v. Clark*, 124 F.4th 775 (9th Cir. 2024). In *Matter of Guerra*, the BIA listed a non-exhaustive set of nine factors as follows:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

26-cv-1508-JES-AHG

24 I&N Dec. 37, 40 (BIA 2006). The BIA also held that IJs may consider any evidence in the record when assessing bond eligibility, so long as the evidence is "probative and specific." *Id.* There is no obligation for the IJ to discuss all the *Guerra* factors and the IJ has wide discretion to give greater weight to one factor over another fact, or as long as the decision is reasonable. *Guerra*, 24 I. & N. at 40.

In *Matter of Guerra* itself, the BIA upheld an IJ's finding that a non-citizen was bond ineligible based on a criminal complaint without a conviction. *Id.* at 41 ("In the context of custody redeterminations, Immigration Judges are not limited to considering only criminal convictions in assessing whether an alien is a danger to the community."). In that case, the BIA emphasized the indicia of reliability in the criminal complaint, and the scope and seriousness of the criminal conduct alleged, which made it reasonable for the IJ to give the complaint significant weight in determining dangerousness. *Id.* Specifically, the court there emphasized that the complaint had been signed by a DEA agent and the description of the drug trafficking scheme the non-citizen was accused of was "specific and detailed." *Id.* ("It describes the source of the information that the respondent was involved in the sale of drugs. It sets forth the events leading to the respondent's arrest, including locations, alleged accomplices, and other details."). Since *Matter of Guerra*, several federal courts have used the "probative and specific" evidence requirement to determine whether IJ's bond determinations comport with due process constraints. *See Garcia*, 817 F. Supp. 3d at 127-28 (collecting cases).

Under this framework, conduct can only be criminally charged in order for an IJ to rely on it, but the evidence relied upon still must contain details and specificity to support the finding of danger or flight risk. Here, Respondents provided the Court with the written Bond Memorandum of the IJ. ECF No. 14-2. The IJ summarized the evidence of the criminal charge as follows:

> Ahead of the [Petitioner's] hearing, he submitted police records pertaining to pending criminal charges against him. The [Petitioner's] evidence suggests he participated in a scheme to work under the identity of another individual so he could work more hours in a week than he was authorized. An investigation

4

26-cv-1508-JES-AHG

of the [Petitioner] and two other individuals determined that the respondent worked for approximately four months in 2023 and 2024 at a nursing home under the identity of a registered certified nursing assistant ("CNA"), resulting in the payment of more than $7,000 to the staffing agency with which the respondent apparently conspired, which money was drawn from Medicare, Medicaid, and private funds. As a result, the [Petitioner] was charged with violating Massachusetts laws pertaining to identity fraud, larceny by false pretense over $1,200, larceny over $1,200, and conspiracy.

ECF No. 14-2 at 3 (citations omitted). The IJ then summarized the arguments made by the parties at the hearing, and provided his reasons for finding that Petitioner failed to meet his burden to show that he is not a danger to the community. *Id.* The IJ explained that the charge was recent and was serious. *Id.* Even though it was not violence, the IJ explained his concerns:

While there is no indication that the [Petitioner's] alleged offenses entailed violence, the Court was nevertheless concerned about the conspiracy in which he is alleged to have participated, particularly given the vulnerability of the patients in whose care the [Petitioner] fraudulently engaged. The [Petitioner] did not simply assume the identity of another; he fraudulently used the identity of a registered CNA so he could work at a nursing and rehabilitation facility. As the detective who investigated this case described, the [Petitioner's] conduct posed a "public health risk for patient care" at the facility where he worked. In the words of the victim whose identity the respondent assumed, these actions could have led to "physical, psychological, emotional, [and] financial harm to any patient or individual including [the victim] and [his] family or worse death." The Court would note that the financial damage to Medicare and Medicaid funds resulting from the [Petitioner's] actions constitutes independent societal harm. Given that the [Petitioner] had valid employment authorization when he allegedly committed these offenses, his participation in this scheme is all the more senseless.

*Id.* at 4.

Here, the Court finds that the IJ's decision meets the probative and specific standard under *Guerra*. The charged crime was discussed in detail and not in vague and unspecific terms. The IJ gave concrete and specific reasons for why he reached his decision. This Court, on habeas review, may not "second-guess[] the immigration judge's weighing of the evidence" or consider sufficiency of the evidence. *Loba L.M.*, 2026 WL 710307, at *8

26-cv-1508-JES-AHG

(citation omitted). Accordingly, the Court finds that Petitioner has not demonstrated that the IJ failed to comply with the bond order.[1]

## IV.    CONCLUSION

For the reasons discussed above, the Court **DENIES** Petitioner's writ of habeas corpus. The Clerk is directed to close the case.

**IT IS SO ORDERED.**

Dated: July 14, 2026

_____
Honorable James E. Simmons Jr.
United States District Judge

---

[1] Respondents also raise an exhaustion argument in their return since Petitioner has filed an appeal to the BIA on the bond order. ECF No. 14. Because the Court is denying the petition on other grounds, the Court declines to address this argument. The Court notes that its decision here is limited to what is cognizable on a writ of habeas corpus, and is not germane to what may be cognizable on appeal. *See Loba L.M.*, 2026 WL 710307, at *8 ("Complaints about the conclusion the IJ reached must be presented through the normal immigration appeal process.").

26-cv-1508-JES-AHG